The next case for argument is 18-1834, Google v. Makor. We're sorry you all had to wait through all that, but it's the luck of the draw as to who goes first in the order. Thank you, Your Honor, and may it please the Court. Chief Judge Prost, a housekeeping matter before we start. I know that in the past we've been here and confused the Court by sitting at the wrong table. We are appellant and appellee in the following case. If you, in the interest of time, will stay at this table, unless you'd rather us change. No, I think it's fine for you to stay, but I appreciate you pointing that out. It's very much in my mind. First case, you're in the right place. Yes, we're starting in the correct spot. We'll be in the wrong spot for Mr. Meyerwood's argument. Again, may it please the Court. The main question in this case, and I think a little simpler than the one we just heard, is what is the broadest reasonable interpretation of the common and ordinary term traffic jam as it's used in the 783 patent? I'm sorry, do that one more time. What is the broadest reasonable interpretation of the term traffic jam as it's used in the 783 patent? I thought I heard the word reasonable in there, but maybe I didn't. If I didn't say it, I certainly meant to. I'm trying not to abbreviate with BRI and that sort of thing. I'm trying to be clear about it. The Board said in this case, Your Honors, that the term was entitled to a narrow construction, that it means a sudden, unpredictable change in traffic in a segment as compared to regular times, and that it added an IE, individual statistical travel time estimates. Well, that can't be teased out of the simple and ubiquitous term traffic jam, nor can it be teased out of the language of the claim. Well, you want traffic jam to mean any time there's a slowdown. The ordinary and customary meaning, and that's not only under a Phillips construction, that would be right, and under the broadest reasonable interpretation standard, that's icing on the cake. Is this something that someone of ordinary skill in that art would think about, or is this something that we ordinary people can be asked? What do we use as the criteria for determining this? Well, I think, first of all, the court's cases say ordinary and customary meaning unless there is either a disavowal or a specific instance of lexicography, which was alleged here. There wasn't either of those in the patent. And so the only argument that we're really faced with is this argument that context somehow or another answers this question. But traffic jam is not a term that requires any special construction, nor was there any testimony that a person of ordinary skill in the art would say, oh, traffic jam. Well, you commoners refer to traffic jam this way, but we scientists refer to it in this other way. No, in fact, the prior art that's cited at the beginning of the patent uses the term traffic jam in its ordinary way. Let me just put it up front, that I understand what you're saying about plain and ordinary meaning. We see that in numerous cases. The reason I'm not there in this case to be very candid is not just reliance on the specification, although I think that's strong, but even the claim language itself. Firstly, it talks about real time, real time traffic jam. It's not just traffic jam in general. I think the language in the claim, that term appears in the context of certain language. You've got these time factors that you look at. I am very sympathetic to the board's reading. I don't know. Maybe there is an ordinary meaning of traffic jam. Maybe there isn't. But whether there is or isn't, we're talking about this is a claim. This is a GPS stuff. This is the context of the claim. I think it's a perfectly fair read of not the rest of the stuff, but just the steps in the claim. So Chief Judge Probst, let me make sure that I'm clear about what our position is. We say there's no doubt that the sudden, unexpected, unpredictable change in traffic is within the ordinary meaning of traffic jam. And by the way, there is an ordinary meaning. The other side agrees that there's an ordinary meaning. They say so at page 5 of the red brief. But if you have a historical statistical record and you work where we work, you know that between 5 and 6, it's impossible to get across H Street because of all the traffic jam. That's not a real time. Isn't that part of the historical statistical record you have in the computation, given the amount of traffic that is generally there every single day at the same time? That may be the case, but what the board did here was to take the ordinary term traffic jam, the term that the patent owner chose to use in its patent, and decided to say that this means something not only not inclusive, but very narrow. And so let's look at that language there. The claim language appears in a clause that says computing real time traffic jam identification at various locations of the individual roads by utilizing the sample vehicles for measuring time delays. What they want to say that that claim language really means is computing sudden, unpredictable changes in traffic. But reading that language, computing real time traffic jam identification, means is there a traffic jam there at the present time? And if it's true every day, it's still a traffic jam. If it's true only on one day, it's a traffic jam. If it's true only because there was an accident or a bottleneck or any number of causes, it's still a traffic jam. They chose the broad, ubiquitous term. And I think there's another important point to remember here as well. And that is that in the district court, they have used this construction against us. They've used the broad and ordinary meaning. In their infringement contentions, which are in the appendix, that's a... Is this an ongoing, what is this, was this IPR filed as part of the... This IPR was filed in response to district court litigation. And there is district court litigation going on here. And isn't the district court going to, I mean, are you having a problem there? Is the district court going to come up with a claim of construction different than the patent office came up with, if we confirm the patent office? Well, I don't know that they will. But my point is this, that they are seeking to ensnare us in infringement by treating the claim as the proverbial nose of wax. In the district court, they're adopting the broad interpretation. In an IPR, where we're entitled to the broadest reasonable interpretation, they're asserting a narrow interpretation. This court's decision in Google versus Intellectual Ventures, a non-precedential but published decision, says that's not appropriate. And, in fact, in that case, it remanded for consideration of the infringement contentions because the board had not taken them into account just like they didn't take it into account in this case. But I would suggest, Chief Judge Prost, that the very simple outcome of this case ought to follow very much like that that this court followed about six months ago, maybe fewer than that, in the Google versus Lee case. Correct the claim construction. Say, no, you were entitled to the broadest reasonable interpretation and the ordinary meaning of traffic jam. And under that, we said in our opening brief that Owens Corning versus Fast Belt were entitled to judgment. Were entitled to judgment of obviousness. In their brief, they offered no argument whatsoever in that light. And so following both Corning and following the Google versus Lee case, adopt the claim construction that's the broadest reasonable interpretation, and Corning says that's the end of the game. That really ought to be the end of the game. You have to get us to reversing on the claim construction. Mr. Castanheiros, let me ask you this. If we thought, because we're using common sense, which has suddenly become part of judicial toolbox, I guess. If we thought that the PTO's interpretation and your interpretation were both reasonable and could be, give or take, within the range of the broadest reasonable interpretation, what should we do? Ours is broader. The rule says broadest. We win. Just like that. It's just like that. That's the whole point of the broadest reasonable interpretation standard is let's read this in the broadest reasonable way that might possibly be read in a district court and then consider it against the prior art that has been cited. Here, you don't even have to do that because the broadest reasonable interpretation, if you think both of our interpretations are reasonable, ours is broader, we should win. Under that construction, they've not offered anything in defense, and that ought to be the outcome. So to uphold the board, we have to conclude that yours is just not quite reasonable enough. I think you'd actually have to conclude that ours is unreasonable, and there's no argument made by the board and no argument made by Mager in this case that our construction is unreasonable. If it's within the zone of reasonable, the broader one wins. That's what BRI says. And Chief Judge Prost, if I could turn back to the source of your concern. There are at Columns 2 and then Columns 8 and 9, there are these three kinds of data that are set forth. And you'll see if you use the language at Column 2, it says, obviously, a true real-time system. There's your real-time from that real-time trajectory. Tell me we're on Column 2. I'm sorry, it's A83, Column 2. No, no, no, I have it in front of me. Starting at Column 36. At Line 36, excuse me. And it says, are you with me now? Okay, obviously, a true real-time system should collect, store, and make use of the following kinds, plural, of data. One, temporary changes. Two, regular predictable changes. Three, sudden unpredictable changes. All three of these. In fact, look at the language that follows those three. The system in the present invention. There they are defining what their invention is. The system in the present invention is built around an idea of collecting and processing information that describes all, not some, all, those changing conditions. Now, of course, none of this language is being offered as a definition of the term traffic jam, because there is no lexicography, as Your Honors pointed out. There is no disavowal, as Your Honors have pointed out, and as we've argued in our board. So, let me just understand what you're saying, because I think this seems to track the claim language that we were focusing on earlier, but to me this seems supportive of just like similar languages found at bottom of Column 9, top of Column 10, where they list these three factors. Doesn't that track what the board did? It tracks what the board did, but only in part. What the board did is say that only Category 3 is traffic jam. Only traffic jams that are caused by sudden unpredictable changes, such as traffic accidents, etc. Now, here's another important thing to note. The language in Columns 2 and Columns 9 and 10 is not exactly the same. You'll see that the comment about visiting dignitaries that's in Column 2 in Category 3 appears in Category 1 at Columns 9 and 10. There's not the sort of clear distinction between these categories. This is just a useful way that the patentee is saying that you can think about the different causes of traffic impediments. Now, they're not using the term traffic jams here, but what's clear is that these are meant to be the collection of causes of what all of us know and talk about as traffic jams. That is the broadest reasonable interpretation. That is what we're entitled to. They don't have an argument on validity in response to that. And that ought to be the end of the case, and I'll return on rebuttal for any further questions. Thank you. What is your answer to the argument that if their interpretation is broader and still within the range of reasonable, you don't really argue it's unreasonable, do you? It is unreasonable, and we do argue that throughout our briefs, Your Honor. Why is it unreasonable? Because it ignores claim language. We're not just construing a term in the abstract apart from the surrounding language of the claim, and it's that step as well as surrounding steps, and the language of the specification. In light of the surrounding language, in light of the specification, it would be unreasonable to construe traffic jam, as Google urges. Is Mr. Christianos correct that in the corresponding district court proceeding, you're asserting a claim construction that's broader? No, he's incorrect. There has been no claim construction asserted in the district court case. Your theory of infringement, though, was broader? It's not inconsistent with what we're doing now. It is not spelled out as clearly here, but we identify regular times that are found in Google systems, and we identify traffic jams. It happens to be identified through a rerouting procedure, which sounds similar to some of their contentions here, but it's not that any rerouting procedure would be a traffic jam under the claims of the patent. Further, judicial estoppel, which is the only rubric under which this sort of limitation can come in, is inapplicable because there's been no determination in the district court case about any claim construction. The contention has not been discussed by the court. Okay, can we just go straight? I mean, as Mr. Christianos pointed out, it's really hard to map this stuff out. In the claim in theory, you've got three categories that are laid out in the claim, one of which talks about real-time traffic jam. And then you've got these two places in the specification that also lay out three categories, right? Yes, ma'am. And then you've got bottom of 9 and 10 that also lays out three factors or categories, right? Is it your view that each 1, 2, 3, they may map onto the 1, 2, 3 in the claims, or is there some kind of strangeness? He pointed out, which I had noted too, the visiting dignitary seems to be a moving object. Well, claims 1 and 2, and that's just between 1 and 2 and not to 3. 3 is distinct from 1 and 2. 1 and 2 are regular, predictable changes that can be accounted for in the system, and 3 is sudden, unpredictable changes. So you think that the map... Let's just look at the three factors set out at the bottom of 9, top of 10, 1, 2, 3. Is it your view that those are what map onto the factors listed at the end of Claim 12? So there's two factors listed at the end of Claim 12. There's regular travel times, and then there's updating of regular travel times. Those are both regular times. And then the last category in Claim 12 is real-time traffic jams. That corresponds with Category 3. 1 and 2 correspond with regular travel times. And it's made clear later in the specification, Column 10, where it shows the criterion used for when current travel times are used rather than regular travel times. What line are you on? Line... Column 10, line 37 to 50, talks about the third category and how that gives truly real-time capabilities. And then also separately at Column 12, lines 29 to 38, talks about when current travel times are to be used over regular travel times. Bottleneck situations. Correct, Your Honor. Is bottleneck defined anywhere? Bottleneck's defined implicitly and discussed in connection with traffic jams, Your Honor. It's used... They're used together, and it's in the abstract. There's one point where there's an or, but it's not distinguished between the two. It could be exemplary. And I would... But visiting dignitaries would certainly come under the third factor normally, not under a regular recurring... I mean, to me, a regular recurring kind of traffic jam, the debate we were having before, is, you know, every day between 5 and 6, you can't move on H Street. I understand that, Your Honor, but visiting dignitaries can be scheduled. I think that's how it's used in the patent. And I think this might actually be a cultural difference. It's between Israel, where the patentee is from, and Washington, D.C., when visiting dignitaries are unpredictable and all over the place. Your Honor, I'm not going to go there, yeah. I would take contention with the statement that there's no testimony that this is the broadest reasonable interpretation. There is. Dr. Krasansky pointed out that it is unreasonable in the context of the claims and the patents to read traffic jam to encompass any sort of congestion, whether normal or abnormal. They talk about that in their briefs. Google does, as recanting what he had said, but he didn't. He said, divorced from any context, you can interpret it that way, but in the context of these claims and in this patent, it must be read as an abnormal slowdown as compared to regular times. I will also say in the briefing there's some misunderstanding that the claim language itself... I will just say the distinction in the claim language makes clear that computing individual statistical travel time estimates, regular times, is different than computing real-time traffic jam identification by utilizing sample vehicles for measuring time delays. Rush hour is already accounted for in the regular times. It would be redundant to conflate these two, and it's an important distinction within the patent, both in the claims and in the specification. If Your Honors have no further questions on claim construction, I would just move on to... They argue that the proposed combination would render... Well, I'm not sure Mr. Castanis... It's been a long morning, but I think his argument was, began and ended in claim construction, right? The argument here began and ended in claim construction. The briefing discusses the application of the claims even under the broadest reasonable construction that the board adopted. I can address or not. I don't know if on reply he's going to address, and I would like the opportunity to, Your Honor. Well, not if you don't raise it, he's not. So why don't we take another brief? Yes, Your Honor. Thank you. I think I have two points in rebuttal, Your Honor, and I'm not going to touch the issue of even under the board's claim construction. I think the briefs adequately address that issue, but we think that the simpler, more straightforward path is simply to give the term traffic jam its broadest reasonable interpretation. The three categories argument that's made by my friend is just that, it's an argument. It doesn't map in the way that he wants it to map, and if he had intended it, if the patentee had intended it to map onto the three claim limitations that they now say that it maps on, then you would see much more parallelism in the language, and you wouldn't have used the term traffic jam, the ubiquitous, broad, and ordinary term, to describe what sort of information a real-time system has, nor would you say that all three of these components are required for a truly real-time system to be in place. The comment about the visiting dignitaries, I think my friend misspoke at the beginning and said that it wasn't in the third category. It certainly is in the third category, column two. And finally, the question of real time, it really doesn't add anything to the discussion here. Real-time traffic jam information means that you're getting information about a traffic jam that is happening in real time. That is true, and you get that, whether the traffic jam is one that is sudden and unpredictable, or that is ordinary on H Street, or that is in some zone of variability, like Pennsylvania Avenue at five o'clock in the afternoon, where the jam might be slow, it might be medium, it might be fast. But why would you want to have his system and go through all this stuff when you know going out the H Street door every day at the same time is going to be the same mess? You really don't need all this equipment and all this stuff that's in his claims. I'm tempted, Judge Plager, to quote Dorothy Parker here and say that this was not terrible, this was fancy terrible, this was fancy with raisins in it. I mean, rush hour is always very bad. Sometimes it's fancy bad. And that's the point of a real-time system, to tell you what is the nature of the traffic jam that you're in. But I dare say, Your Honor, that when you're stuck in traffic, even if it's every day, you don't say, Oh, gee, I'm here in a sudden and unpredictable stoppage of traffic, but it's not a traffic jam. Or I'm here in a non-sudden and very predictable stoppage of traffic, therefore it's not a traffic jam. You're in a traffic jam on 15th Street or on H Street, whether it's happening every day, or it's happening and it's fast on one day, not fast on another, or if it's sudden and unpredictable. It's a traffic jam all the ways. I hear you. And I realize... Are we entitled to use our personal experiences, or is that not appropriate? Well, I think that you bring to judging all of the common sense, as you started this argument with, that you have, and that includes your life's experiences. But I would add one other thing, and that is that the patent here itself says you need all of this for a truly real-time system. And they're saying you don't need to have all of this, you only need to have this one category in order to determine whether there's a traffic jam or not. This construction that they now want to try to save their patent before the board really guts this patent of much of the efficacy that it was intended to have. So unless there are further questions, I thank the Court for its indulgence, especially after that first argument. Thank you. Case is submitted.